## Case No. 9,451.

MERCHANTS' NAT. BANK OF HASTINGS v. TRUAX.

[1 N. B. R. 545 (Quarto, 146);[1] 1 Am. Law T. Rep. Bankr. 73.]

District Court, D. Minnesota. April 30, 1868.

BANKRUPTCY—MORTGAGE—KNOWLEDGE OF INSOLVENCY—FRAUD ON CREDITORS.

A mortgage given when a debtor was insolvent is not valid, if the mortgagee had reasonable cause to believe that the debtor was insolvent, and that the mortgage was given in fraud of creditors; hence, the prayer of a petition asking that such mortgage be first paid off from the avails of the mortgaged property must be denied.

[Cited in Re Gay, Case No. 5,279; Re Wright, Id. 18,071; Re Randall, Id. 11,551; Re Kingsbury, Id. 7,816; Graham v. Stark, Id. 5,676; Re Wells, Id. 17,388; Re Bininger, Id. 1,420. Re Walton, Id. 17,130; Rison v. Knapp, Id. 11,861; Martin v. Toof, Id. 9,167; Singer v. Sloan, Id. 12,899.]

[Walter C. Cowles was declared a bankrupt upon the petition of S. G. Renick, president of the First National Bank of Hastings. Case No. 3,297. The Merchants' National Bank of Hastings now seek to establish a lien by way of chattel mortgage upon the bankrupt's assets.]

NELSON, District Judge. The Merchants' National Bank holding a mortgage upon a large amount of the personal property of Cowles, who was adjudicated a bankrupt December 21st, 1867, files a petition against Daniel W. Truax, the assignee, claiming a recognition of the lien, and asking that it be first paid off from the avails of the mortgaged property. The assignee, in his answer, alleges that the property was mortgaged to the bank to defraud the creditors of the debtor, and with the intent to give a preference, and that the petitioner having proved up the

[1] [Reprinted from 1 N. B. R. 545 (Quarto, 146), by permission.]

claim, secured by the mortgage, before the register, has released, abandoned, and discharged the property, taken as security therefor. The evidence reported shows the same state of facts to exist in regard to this transaction as was shown at the time Cowles was adjudged a bankrupt, and clearly establishes two propositions, which are conclusive of the petitioner's rights.

First. That Cowles was insolvent at the time he executed the mortgage. Insolvency, within the meaning of the bankrupt act, when applied to traders, means inability to pay debts in the ordinary course of business, as persons carrying on trade usually do. See Bouv. Law Dict. tit. "Insolvency"; [Buckingham v. McLean] 13 How. [54 U. S.] 151; 4 Cush. 128; 3 Gray, 594. The debtor, although totally unable to meet the ordinary current expenditures necessary to enable him to carry on his business, seems to have been blind to his condition; this, however, may have arisen from the fact that he regarded himself as not absolutely broken up, and hoped that he might retrieve his affairs, and eventually pay his debts, but his own belief as to his condition cannot disprove the fact, substantiated by the strongest testimony, of his insolvency.

Second. The mortgagee had reasonable cause to believe that Cowles was insolvent, and that the mortgage was in fraud of creditors. The testimony of Howes, the cashier, as well as that of Van Dyke, the president, is conclusive upon this point. Howes says: "Cowles told him at the time that the personal property mortgaged was subject to a lien; that judgment would go against him, and he should be subjected to great loss unless he should be able to get the money to release the property; $1,000 was paid then, and the balance, deducting stamps, &c., was credited to an account headed 'W. J. Van Dyke, special.' The balance was to be paid upon W. J. Van Dyke's check; it was to be paid by Cowles at Mr. Van Dyke's say so; and was not to be paid upon Mr. Cowles's checks. I think the credit was made to Van Dyke at my suggestion, inasmuch as the money was not to be paid except for the purpose of manufacturing the lumber, and to make our security available." The evident design on the part of the witness is apparent from this portion of his testimony. He wished to prevent, if possible, the creditors of Cowles from reaching the money. Van Dyke appears to have taken the same view of the case, and says he wished the money to be so placed that Cowles could tell his creditors that he had none. At this time Howes had reasonable cause to believe Cowles solvent. He says, "At the time the loan was made, I considered Cowles solvent,—that is, if his assets were well managed, that they were more than his liabilities."

It is unnecessary to consider this case further; it seems too plain to admit of doubt; allowing all the testimony offered by the peti-

tioner, and rejecting that portion objected to by him, we are unable to grant the relief asked for. Prayer of petition denied.

[C. D. Tuttle, the holder of another chattel mortgage on the property, sought by petition to establish a lien thereon, which was also denied by the court. Case No. 14,277.]